IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARGARET ANN HAUGHTON,

              Plaintiff,

    v.

MEGAN J. BRENNAN,
Postmaster General, U.S. Postal Service,

              Defendant.

No. 3:15-cv-00888-HZ

OPINION & ORDER

Glenn Solomon
1001 SW Fifth Ave., Suite 1220
Portland, OR 97204

    Attorney for Plaintiff

Billy J. Williams
United States Attorney
James E. Cox
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third. Ave., Suite 600
Portland, OR 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Margaret Ann Haughton brings this hostile work environment claim against her employer, Defendant Megan J. Brennan in Brennan's capacity as Postmaster General of the United States Postal Service. Plaintiff claims that she was subjected to a hostile work environment based on her protected Equal Employment Opportunity (EEO) activity, in violation of Title VII of the Civil Rights Act of 1964.[1]

Defendant moves for summary judgment. Defendant asserts that Plaintiff was subjected to an appropriate level of workplace discipline and supervision based on legitimate, non-discriminatory reasons. Defendant further contends that Plaintiff has not, and cannot, establish two of the three requisite elements of a hostile work environment claim arising under Title VII.

The Court heard oral argument on Defendant's motion on June 27, 2016. For the reasons that follow, the Court grants Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff is employed by the United States Post Office as a mail handler. Compl. ¶ 7, ECF 1. She worked at the Mount Hood Processing and Distribution Center (Mount Hood Center) in Portland, Oregon beginning in 2007 and during the events at issue in this case. Solomon Decl. Att. 1 at 2, ECF 26. Operations at the Mount Hood Center are overseen by individuals known as Supervisor Distribution Operations (SDOs) who report to individuals known as Manager Distribution Operations (MDOs). Muyuela Decl. at 2, ECF 19. Plaintiff is a non-supervisory employee and is subject to direct supervision by SDOs as well as MDOs. Id.

---

[1] Plaintiff initially alleged that she was discriminated against due to her race, color, age, and national origin, in addition to her protected EEO activity. However, in her response to Defendant's motion for summary judgment and at oral argument, Plaintiff conceded that she cannot raise a genuine issue of fact as to whether race, color, national origin, or age was a substantial motivating factor for the harassment she allegedly suffered. Pl.'s Opp. to D.'s Mot. for Summ. J. at 2, ECF 26. Plaintiff has provided no evidence suggesting that those attributes motivated her supervisors to discriminate against or harass her. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's discrimination claims.

2 – OPINION & ORDER

Plaintiff's hostile work environment claim is based on several specific confrontations, described below, between Plaintiff and various MDOs and SDOs at the Mount Hood Center, as well as more general workplace hostility resulting from Plaintiff's day-to-day interactions with those same supervisors. Plaintiff argues that various supervisors at the Mount Hood Center subjected Plaintiff to hostile supervision over a four-month period, from June-October 2013,[2] in an effort to induce Plaintiff to quit her job, and did so because of Plaintiff's protected EEO activity. Compl. ¶ 9-14.

A. The 2008 wedding dispute

Plaintiff alleges that she was first subjected to workplace harassment following a 2008 confrontation with the Mount Hood Center's manager, Sharon Blackburn. Solomon Decl. Att. 1 at 4. Blackburn asked Plaintiff to admit that Plaintiff had seen co-workers that had taken paid sick leave drinking alcohol at a wedding. Id. at 5. Plaintiff refused. Id. Soon thereafter, Blackburn began to humiliate Plaintiff by yelling at Plaintiff, moving Plaintiff between assignments, and accusing Plaintiff of poor work performance. Id. Blackburn had not treated Plaintiff this way prior to Plaintiff's refusal to testify. Id. Plaintiff filed an EEO complaint in response to Blackburn's treatment. Id. at 6.

B. The 2009 EEO dispute

In 2009, Blackburn moved Plaintiff from one mail sorting machine to another. Solomon Decl. Att. 1 at 6. When Plaintiff complained that Blackburn was not following protocol, Blackburn insisted that Plaintiff move and then said that Plaintiff "always file[d] EEOs." Id.

---

[2] Plaintiff's submissions to the Court cite to events prior to June 2013. However, Plaintiff's complaint states that the harassment at issue occurred from June-October 2013, which is a formal admission that withdraws from issue the question of when the harassment occurred and conclusively binds Plaintiff to establishing her claim within that four-month window. See Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). Furthermore, even if the Court considered every incident described by Plaintiff regardless of the date, it would not alter this Court's conclusion.

3 – OPINION & ORDER

Plaintiff cannot remember the exact date of this incident and is not sure when she filed the EEO complaints to which Blackburn alluded. Id.

C. The June 2013 mail sorter dispute

In mid-June 2013, MDO Titus Muyuela instructed Plaintiff and a co-worker, Amy Ho, to work on AI 21, a mail sorting machine at the Mount Hood Center. Muyuela Decl. ¶ 5. Plaintiff and Ho were scheduled to work on a different machine but Muyuela felt that the AI 21 assignment was a higher priority. Id. Plaintiff refused to change assignments. Id. Muyuela explained that the union agreement between the postal service and its mail handlers allowed MDOs to move mail handlers between assignments but Plaintiff still refused to move. Id.

D. The July 2013 "mule" dispute

On July 25, 2013, Plaintiff was assigned to use a "mule" (an electric tug used to pull mail carriers) at the Mount Hood Center's south docks. Unruh Decl. ¶ 3, ECF 21. Plaintiff refused to retrieve the mule because the previous operator had not left the mule at the south docks "staging area." Id. SDO Unruh told Plaintiff that it was her responsibility to retrieve the mule. Id. Plaintiff continued to refuse to retrieve the mule until another mail handler was assigned to the task. Id.

On July 30, 2013, MDO Muyuela conducted an investigation into the incident. Muyuela Decl. ¶ 7. During the investigative interview, Muyuela warned Plaintiff of possible repercussions if she continued to refuse orders. Cox Decl. Att. 1 at 36. Muyuela determined that Plaintiff's behavior warranted a formal letter of warning. Muyuela Decl. ¶ 8. Plaintiff filed a union grievance in response to Muyuela's decision, which resulted in an agreement to purge the letter from Plaintiff's record. Id.

On August 2nd, 2013, Muyuela asked SDO Sharon Mattson to instruct Plaintiff to come to his office so he could issue Plaintiff the letter of warning. Id. at ¶ 10. Mattson approached

4 – OPINION & ORDER

Plaintiff, but Plaintiff would not go unless a union shop steward was present. Cox Decl. Att. 1 at 28. Mattson told Plaintiff she did not have the right to a shop steward at the meeting. Id. Mattson conferred with Muyuela and returned to Plaintiff to reiterate Muyuela's instructions, but Plaintiff refused to go to the office without union representation. Cox Decl. Att. 1 at 28-29. Mattson then wrote Plaintiff up for refusing to follow instructions. Id. at 29.

The following evening, Muyuela conducted an investigative interview into Plaintiff's refusal to come to the office. Muyuela Decl. ¶ 11. Muyuela again told Plaintiff that she would be disciplined more severely if she continued to ignore instructions from supervisors. Id. Muyuela then issued Plaintiff a 7-day "no lost time" suspension. Muyuela Decl. ¶ 12. Plaintiff was allowed to continue working her normal schedule at full pay while the suspension was in effect. Id. Plaintiff filed a union grievance in response to Muyuela's decision, which resulted in an agreement to purge the suspension from Plaintiff's record. Id.

E. The September 2013 mail container dispute

On September 23, 2013 SDO Paul Unruh and MDO Bob Macy observed Plaintiff pulling two mail containers at the same time. Unruh Decl. ¶ 5. Macy told Plaintiff that there was a safety policy requiring that she only pull one container at a time. Cox Decl. Att. 1 at 13. Plaintiff continued to move both containers simultaneously. Unruh Decl. ¶ 6. Plaintiff claims she did so only to clear the hallway for others. Cox Decl. Att. 1 at 14. Macy wrote Plaintiff up for not following his instructions. Id. at 15. SDO Unruh conducted an investigative interview with Plaintiff regarding the write-up and decided to issue a 7-day "no time lost" suspension. Unruh Decl. ¶ 6. The suspension was later purged from Plaintiff's record. Muyuela Decl. Ex. 6.

F. The October 2013 South Dock/EEO dispute

On October 10, 2013, Plaintiff was ordered by SDO Paul Unruh to unload a mail truck at the Mount Hood Center's south dock using a manual pallet jack. Solomon Decl. Att. 1 at 7. Plaintiff refused because she felt the mail pallets were stacked too high to move safely using the manual jack. Id. Plaintiff argued with Unruh, who warned Plaintiff she would be subject to discipline if she continued to ignore instructions. Unruh Decl. at ¶ 6. At this point, Blackburn, the plant manager, and MDO Macy arrived at the south dock. Solomon Decl. Att. 1 at 7. Plaintiff claims that the first thing Blackburn said to Plaintiff was "you always file EEO." Id. at 8-9. Blackburn then insisted that Plaintiff unload the truck. Id. at 7-8. When Plaintiff refused, Blackburn yelled at Plaintiff and told Unruh to eject Plaintiff from the building. Id. at 8, 10. Blackburn quickly retracted her order and told Plaintiff to go back to work. Id. Plaintiff worked the remainder of her shift, an additional eight hours, but then began to have a panic attack and left. Id. Plaintiff felt emotionally unable to return to work until December 10. Id. Plaintiff experienced stress-related anxiety and depression following the south docks dispute. Compl. ¶ 15.

G. General harassment

In addition to the events described above, Plaintiff claims that she was exposed to a general pattern of harassment at the hands of Macy, Muyuela, Mattson, Unruh, and Blackburn. Compl. ¶ 9; Cox Decl. Att. 1 at 12. Plaintiff claims that she was yelled at, isolated, and singled out for excessive supervision and surveillance on a regular basis. Compl. ¶ 9-10. It is unclear, however, whether this occurred in connection to, or even as a result of, one or more of the incidents described above.

H. Plaintiff's EEO activity

Plaintiff claims that she filed EEO complaints against Muyuela, Blackburn, Mattson, and Unruh. Solomon Decl. Att. 1 at 6. It is unclear precisely when Plaintiff filed each of these complaints because Plaintiff does not provide dates for each of her filings. Plaintiff filed at least one EEO complaint, and possibly two, before the 2009 incident when Blackburn mentioned Plaintiff's EEO activity. Id. at 38-39. Plaintiff filed an EEO complaint in November 2010 and her complaint was closed in April 2011. Compl. ¶ 8. Plaintiff contacted an EEO representative on September 4, 2013, but does not appear to have filed a formal complaint, claiming that Muyuela threatened to fire her and Mattson was subjecting her to excessive supervision and had written false statements about Plaintiff (presumably in reference to the incidents surrounding the mule described in Section IV above). Mot. Summ. J. at 10. Plaintiff filed a final EEO complaint on October 11, 2013, the day after the south dock dispute with Blackburn. Id. Muyuela and Mattson were unaware of Plaintiff's EEO activity during the June 2013-October 2013 timeline provided by Plaintiff's complaint. Muyuela Decl. ¶ 6, 13; Cox Decl. Ex. 2 at ¶ 22. It is unclear if Macy or Unruh were aware of Plaintiff's EEO activity, but it is perhaps telling that neither denies knowing about the EEO activity in their respective declarations. It is undisputed, however, that no supervisor other than Blackburn ever mentioned Plaintiff's EEO activity to Plaintiff in any context. Cox Decl. Att. 1 at 12.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**DISCUSSION**

Plaintiff alleges that she was subject to a hostile work environment based on her protected EEO activity. For the reasons discussed below, the Court finds that Plaintiff has failed to establish a prima facie case for her claim and grants Defendant's motion for summary judgment.

A. Nature of Plaintiff's EEO Activity

The Court must first address whether Plaintiff can bring a Title VII hostile work environment claim based on harassment allegedly resulting from Plaintiff's EEO activity. Plaintiff can do so only if the EEO activity was itself related to a protected status under Title VII. Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006) ("Not every complaint garners its author protection under Title VII. . . . While no 'magic words' are required, the complaint must in some way allege unlawful discrimination."). If Plaintiff's EEO complaints failed to raise discrimination claims cognizable under Title VII, Plaintiff's filing of those complaints was not a protected activity under Title VII. Robbins v. D.C., No. 15-7072, 2016 WL 3545076, at *3 (D.C. Cir. June 10, 2016) ("[B]are invocation of 'EEOC,' divorced from any allegation of unlawful discrimination on a statutorily prohibited ground, does not constitute protected activity under Title VII."); Peters v. Dist. of Columbia, 873 F.Supp.2d 158, 202 (D. D.C. 2012) ("While informal complaints to management may constitute protected activity [under Title VII], the plaintiffs must clearly complain about discriminatory treatment.").

Neither party provided the Court with Plaintiff's EEO complaints or evidence of the contents of each of the complaints.[3] It remains unclear to the Court exactly when Plaintiff filed her complaints and how many complaints Plaintiff filed in total. Nevertheless, the parties both submitted to the Court at oral argument that Plaintiff filed at least one EEO complaint regarding discrimination on Title VII protected grounds prior to June 2013, when the alleged hostility in this case began. Based on this joint admission, the Court will assume without deciding that at least one of Plaintiff's EEO complaints was protected by Title VII.

---

[3] Plaintiff presented the Court with evidence of the substance of only one EEO complaint, which Plaintiff filed against Sharon Blackburn, the plant manager, after Blackburn allegedly harassed Plaintiff following Plaintiff's refusal to admit that several postal employees were drinking alcohol at a wedding while on paid sick leave. Solomon Decl. Att. 1 at 5-6. The Court notes that the EEO complaint just described is not protected by Title VII because harassment due to a failure to speak out against co-workers is not itself cognizable under Title VII.

9 – OPINION & ORDER

B. Sufficiency of Plaintiff's EEO Claim

Title VII provides a cause of action when an employee is subjected to a hostile work environment, including harassment due to an employee's engagement in an activity protected by Title VII. Oncale v. Sundowner Offshore Servs., Inc., 523 US 75, 78 (1998); Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000) (extending hostile work environment claims to those based on engaging in protected activities). To successfully establish the prima facie case for her claim, Plaintiff must first show that her workplace was both objectively and subjectively hostile. Shepard v. City of Portland, 829 F.Supp.2d 940, 956 (D. Or. 2011) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Plaintiff must then demonstrate that the harassment occurred because she engaged in protected activity. Id. at 956 (citing Oncale, 523 U.S. at 80). Even examining the facts in the light most favorable to the non-moving party, Plaintiff in this case fails to establish a prima facie case for a hostile work environment claim because she has established neither objective hostility nor causation between her protected EEO activity and the harassment she allegedly suffered.[4]

1. Objective hostility

Whether harassment is objectively hostile is judged from the perspective of a reasonable person and depends on the totality of the circumstances, including the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. Harris v. Forklift

---

[4] Defendant does not challenge Plaintiff's ability to demonstrate subjective hostility. As an apparent result of Plaintiff's encounters with her supervisors, Plaintiff felt compelled to take stress-related medical leave, considered quitting her job, contacted her union representative on a handful of occasions, filed EEO complaints, and claimed in her sworn deposition that she felt discriminated against and singled out for abuse at work. Plaintiff's subjective experience goes beyond what was required in past cases to satisfy this element of a hostile work environment claim. See Nichols, 256 F.3d at 873 (holding that plaintiff's workplace was subjectively hostile because the plaintiff made informal complaints on several occasions and gave unrebutted testimony describing his subjective perception of workplace hostility.); Davis v. Team Elec. Co., 520 F.3d 1080, 1096 (9th Cir. 2008) (holding that plaintiff's "distraught" journal entries describing her unhappiness with the harassment she experienced at work established subjective hostility).

10 – OPINION & ORDER

Sys., Inc., 510 U.S. 17, 23 (1993)). The harassment must be sufficiently severe and pervasive to alter the conditions of employment and create an abusive working environment, although the requisite severity of the conduct varies inversely with its pervasiveness. Id.

In general, single, isolated instances of harassment are not objectively hostile unless extremely severe. Faragher, 524 U.S. at 788. Likewise, performance-related comments made by a supervisor to an employee, even in an aggressive or embarrassing manner, typically do not support a Title VII hostile work environment claim. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108-09 (9th Cir. 2008) (finding that a supervisor aggressively confronting an employee about work-related deficiencies did not give rise to a hostile work environment claim because the "comments were all performance related.").

The conduct Plaintiff complains of was not objectively hostile. First, the conduct was not particularly severe, especially when compared with prior cases addressing the same issue. Compare Vasquez v. County of Los Angeles, 307 F.3d 884, 893 (9th Cir. 2002) (no hostile work environment when the employee was told he had "a typical Hispanic macho attitude," he should work in the field because "Hispanics do good in the field," and he was yelled at in front of others); Manatt, 339 F.3d at 798–99 (finding racially charged but sporadic or isolated behavior such as calling an employee of Asian heritage a "China man" and pulling eyes back to mock the appearance of Asians insufficient to create a hostile work environment); with McGinest v. GTE Service Corp., 360 F.3d 1103, 1114–15 (9th Cir. 2004) (hostile work environment existed when the plaintiff's supervisors failed to maintain his automobile because of his race, causing him to be involved in a serious auto accident and, in addition, subjected him to extreme racial insults"); Nichols, 256 F.3d at 872–73 (hostile work environment existed when a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week

11 – OPINION & ORDER

and often several times per day); Steiner, 25 F.3d at 1463 (hostile work environment where supervisor directed extremely demeaning and sexually explicit comments at female employee in public on multiple occasions).

Title VII is not a general workplace civility code. Faragher 524 U.S. at 788. Some of the conduct Plaintiff describes, including Blackburn's conduct during the October 2013 south dock dispute, may have been unprofessional but was not especially pernicious or derogatory. None of the incidents Plaintiff recounts is severe enough, on its own, to support Plaintiff's claim. Instead, the kinds of altercations between Plaintiff and her supervisors described by Plaintiff are more appropriately deemed interpersonal clashes outside the scope of Title VII. See, e.g., Surrell, 518 F.3d at 1108-09 (holding that a supervisor's "performance related" comments, including accusing an employee of failing to pay attention, losing the company money, and working too slowly, failed to support the employee's hostile work environment claim because the comments "were not sufficiently severe."); Alfonso v. GTE Directories Corp., 137 F.Supp.2d 1216, 1222 (D. Or. 2001) (holding that it was "impolite" but not "hostile" for Title VII purposes when an employer followed the plaintiff around the office while screaming at her, shoving a fax in her face, and demanding that she perform certain tasks, all in front of the plaintiff's coworkers).

Plaintiff's allegations describe little more than a series of fractious interpersonal conflicts between Plaintiff and her supervisors arising from Plaintiff's repeated refusal to comply with instructions that she perform tasks well within the scope of her employment. Although the Court accepts Plaintiff's allegations that she was frequently admonished by her supervisors, the pervasiveness of the conduct was not so extreme that it makes up for the lack of severity. While unpleasant, Plaintiff's workplace was not objectively abusive and the conflicts between Plaintiff and her supervisors did not meaningfully alter the conditions of Plaintiff's employment. As such,

the harassment that Plaintiff alleges is not sufficiently severe and pervasive to support, on its own, her hostile work environment claim.

Nor is there any evidence of physical harassment. While Plaintiff alleges that she was given unsafe work assignments, she makes no effort to link these assignments to some deliberate effort to cause Plaintiff physical harm. Plaintiff was threatened with disciplinary actions including docked pay, firing, and ejection from the Mount Hood Center, but nothing in the record suggests that her physical safety was deliberately jeopardized or that the harassment she allegedly endured involved any kind of physical intimidation.

Likewise, the harassment Plaintiff describes does not rise to the threshold for humiliation found in prior cases. "Humiliation" in the context of a hostile work environment claim occurs primarily when a plaintiff has been subjected to extremely demeaning, insulting, and objectively offensive comments, typically in public or around other co-workers. See, e.g., McGinest., 360 F.3d at 1114–15; Nichols, 256 F.3d at 872–73; Steiner, 25 F.3d at 1463; Craig v. M & O Agencies, Inc., 496 F.3d 1047. Plaintiff insists that she felt particularly humiliated during the October 2013 south dock dispute with Blackburn, during which Blackburn yelled at Plaintiff and threatened to eject Plaintiff from the Mount Hood Center. But Blackburn did little more than loudly impugn Plaintiff's work ethic and accuse Plaintiff of performance issues. At most, Blackburn's comments were "mere offensive utterances." See Harris, 510 U.S. at 23. While undoubtedly upsetting to Plaintiff, Blackburn's conduct was not the sort of acutely humiliating conduct that establishes a hostile work environment claim.

Finally, it appears that the conduct complained of did interfere to a certain extent with Plaintiff's work performance because following the October 2013 south dock dispute, Plaintiff felt compelled to take stress-related sick leave. On the other hand, Plaintiff worked her normal

13 – OPINION & ORDER

hours from June 2013 until the south dock dispute, despite Plaintiff's allegations of persistent hostility. While Plaintiff's encounters with her supervisors eventually harmed Plaintiff's subjective "psychological wellbeing," the factors discussed above strongly suggest that Plaintiff's workplace was not so abusive as to make such an extreme response objectively reasonable. See Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) ("[Plaintiff] claims the incident pervaded her work environment to such a degree that she required psychological help. . . . The question remains whether her apprehension was objectively reasonable.").

2. Causation

To establish the causation element of a Title VII hostile work environment claim, a plaintiff must show that the harassment occurred because the plaintiff engaged in a protected activity. Oncale, 523 U.S. at 80. A key issue in this inquiry is whether the plaintiff was "exposed to disadvantageous terms or conditions of employment" to which other employees were not exposed. Id. Of particular relevance to this case, workplace discipline is not, without more, evidence of a causal link with the employee's protected activities. See Surrell, 518 F.3d at 1108-09; Na'im, 629 F.Supp.2d at 80 (D. D.C. 2009) ("[P]laintiff . . . has failed to indicate how [a series of work-related disciplinary actions taken by supervisors against plaintiff], all of which occurred over at least a five-year period, were connected [to plaintiff's EEO activity.]"); Tolson, 618 F.Supp.2d at 21 (holding that five discrete incidents of hostile behavior did not constitute a hostile work environment because there was no evidence in the record to tie any of those events to one another or demonstrate a common cause).

Plaintiff has failed to establish a causal link between her EEO activity and the harassment she allegedly suffered at the Mount Hood Center. Most importantly, Plaintiff admits that Sharon

14 – OPINION & ORDER

Blackburn, the plant manager that allegedly referenced Plaintiff's EEO activity during the October 2013 dispute on the south dock, was the only supervisor to ever bring up Plaintiff's EEO activity, and that Blackburn did so only once during the June-October 2013 timeframe in which the alleged harassment occurred. Plaintiff has failed to establish that any other supervisor ever so much as mentioned Plaintiff's EEO activity or otherwise demonstrated that Plaintiff's EEO activity motivated efforts to surveil, isolate, discipline, or harass Plaintiff.

The Court is unconvinced that there is even a causal link between the south dock dispute with Blackburn and Plaintiff's protected EEO activity. Plaintiff and another supervisor were already arguing over Plaintiff's failure to follow work-related instructions when Blackburn arrived on the scene. The timeline and context of the dispute makes it implausible that the entire dispute was motivated by some secret animus Blackburn held against Plaintiff based on Plaintiff's apparent tendency to file EEO complaints. And even assuming that Plaintiff can establish a causal link between her EEO activity and the dispute with Blackburn on the south dock, Plaintiff has not shown, as discussed in the preceding section, that that single incident rose to the level of objective hostility necessary to establish a hostile work environment claim.

In addition, Plaintiff undermines the possibility that Blackburn harassed Plaintiff based on Plaintiff's EEO activity by admitting that Blackburn first began to harass Plaintiff in 2008, before Plaintiff filed any EEO complaints and after Plaintiff refused to admit that fellow mail handlers were drinking alcohol at a wedding while on paid sick leave. Plaintiff even states that Blackburn began to harass Plaintiff <u>because</u> Plaintiff refused to turn in her coworkers.  Plaintiff, in effect, admits that the alleged harassment began prior to, and in response to something other than, her protected EEO activity. Plaintiff does not provide any evidence that Blackburn's motivation to harass Plaintiff changed from anger over Plaintiff's refusal to turn in her coworkers

15 – OPINION & ORDER

to anger due to Plaintiff's EEO activity. See Shepard, 829 F.Supp.2d at 956 ("[P]laintiff admits that the alleged harassment began prior to his participation in any protected activities. Accordingly, by plaintiff's own admission, he is unable to show that he was [harassed] because he engaged in protected activities.").

Finally, Plaintiff has not demonstrated that she received disadvantageous treatment when compared with her fellow employees. To the contrary, the record makes clear that Plaintiff's supervisors, on a number of occasions, issued warnings, suspensions, and other forms of discipline to other employees, including employees that had not engaged in any form of protected activity. Muyuela Decl. at ¶ 6, 13, 14; Blackburn Decl. at ¶ 9; Unruh Decl. at ¶ 4, 7, 9, 10; Unruh Supp. Decl. at ¶ 2, ECF 23. Plaintiff's assertion, without any evidentiary support, that she was singled out and treated differently from her co-workers is not enough to raise a genuine factual issue.

## CONCLUSION

The Court grants Defendant's motion for summary judgment [18] because Plaintiff fails to establish a prima facie case for her hostile work environment claim.

IT IS SO ORDERED.

Dated this 8 day of August, 2016.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

16 – OPINION & ORDER